UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOUGLAS SPICER,

      Plaintiff,

v.                        Case No:  2:25-cv-01094-JES-NPM

ONEMAIN   FINANCIAL   GROUP,
LLC,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of Defendant OneMain Financial Group, LLC's ("OneMain") Motion to Compel Arbitration (Doc. #6) filed on December 3, 2025.  Plaintiff, Douglas Spicer ("Spicer"), filed his Memorandum in Opposition (Doc. #12) on January 14, 2026.  For the reasons set forth below, the motion is granted.

**I.**

Spicer and OneMain entered a Loan Agreement on February 3, 2025, in the amount of $20,145.45.  (Doc. #6-1, p. 5.)  The loan was secured by Spicer's 2023 Honda CR-V.  (Id.)  After Spicer made the first four monthly payments, he experienced financial hardship and sent OneMain a letter dated June 25, 2025, to request temporary

deferment of the next three scheduled payments.[1]  (Doc. #1-3, p. 8.)

That next month, Spicer sent a "Settlement Letter and Final Resolution Agreement" to OneMain.  (Id. at p. 9.)  The letter purported to offer a settlement due to "One Main Financial's disingenuous conduct regarding the previously requested payment deferment plan."  (Id.)  Spicer enclosed a check in the amount of $100.00 that was "tendered as full and final consideration for complete settlement of all obligations related to this loan." (Id.)  OneMain treated this check as a partial payment to the loan and contends this letter did not dispose of Spicer's underlying loan obligations.  (Doc. #14-1, p. 4.)  Spicer later sent another check to OneMain in September 2025 in the amount of $1,767.65. (Doc. #1-1, ¶ 14.)

The Loan Agreement contains the following arbitration clause:

> **DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties that is more informal than a lawsuit in court. In arbitration, both sides present their case to a neutral third person-the arbitrator-instead of a judge or jury. Arbitration allows for more limited discovery than in court, and an arbitrator's rulings are subject to limited review by courts. Arbitration takes place on an individual basis; class proceedings are not permitted. **UNDER THIS ARBITRATION AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN**

---

[1] There are no documents showing whether OneMain replied to the letter.

**A CLASS OR REPRESENTATIVE ACTION TO THE FULLEST EXTENT PERMITTED BY LAW.**

**1.   CLAIMS AND DISPUTES COVERED.** Except as specified in this Arbitration Agreement, Lender and I agree that either party may elect arbitration of any Covered Claim. The term "Covered Claim" is intended to be broadly interpreted and includes the following claims or disputes, whether based in contract, tort, statute, equity, or any other legal theory:

- claims arising out of or relating to **any aspect of the relationship** between Lender and me, including, but not limited to, this Agreement or loan; any previous retail credit agreement ("Retail Contract") assigned to Lender; or any previous loan from or assigned to Lender;
- claims arising out of or relating to any documents, disclosures, advertising, or actions or omissions, including any allegation of fraud or misrepresentation, relating to this or any previous loan or Retail Contract made by or assigned to Lender or to any other of Lender's products or services;
- claims arising out of or relating to negotiations, performance, or breach of this or any previous loan or Retail Contract made by or assigned to Lender;
- claims arising out of or relating to the closing, servicing, collecting, or enforceability of any transaction involving Lender or me;
- claims arising out of or relating to any insurance product, service contract, membership plan, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender;
- claims arising out of or relating to communications by or on behalf of Lender, including claims under the Telephone Consumer Protection Act, do-not-call regulations, or similar laws or any other claim involving emails, faxes, text

messages, or calls placed using automated technology or an artificial or prerecorded voice, including communications relating to offers of unrelated products or services; and

- claims arising out of or relating to the collection, retention, protection, use, disclosure, or transfer of any information about me or my accounts for any of Lender's products or services.

A Covered Claim is subject to arbitration regardless of when it arose, whether it is before the date of this or any prior Agreement between Lender and me (such as claims relating to advertising or disclosures or claims involving predecessors), or whether the claim arises after the termination of the Agreement. This Arbitration Agreement shall survive termination of any loan or Retail Contract between Lender and me. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

(Doc. #6-1, p. 9.)

OneMain has filed a motion seeking to compel arbitration based on this arbitration agreement. Spicer responds that the arbitration agreement has been superseded by his settlement offer and, even if the Loan Agreement was not superseded, his claims are not covered by the arbitration clause. (Doc. #12, pp.4-7.) Spicer is incorrect as to both arguments.

## II.

"If there is an arbitration agreement governing this dispute, it is governed by the Federal Arbitration Act (the 'FAA'), 9 U.S.C. §§ 1 et seq., which 'embodies a liberal federal policy favoring arbitration agreements.'" Bazemore v. Jefferson Cap. Sys., LLC,

-4-

827 F.3d 1325, 1329 (11th Cir. 2016)(quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)).  The FAA has three main sections:

> 9 U.S.C. § 2—the "primary substantive provision" of the FAA—provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable."  9 U.S.C. § 3 directs courts to stay their proceedings in any case raising a dispute on an issue referable to arbitration. And 9 U.S.C. § 4 "authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with [an] arbitration agreement."

Burch v. P.J. Cheese, Inc., 861 F.3d 1338, 1345 (11th Cir. 2017) (alteration in original)(citations omitted).  "[T]he FAA creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'" but "the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Bazemore, 827 F.3d at 1329 (citations omitted).  Ultimately, "arbitration is simply a matter of contract."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).  Thus, federal law, through the FAA, "establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." Emps. Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001).

"Under both federal and Florida law, a party has a right to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." Adams v. Lashify, Inc., 689 F. Supp.3d 1146, 1153 (M.D. Fla. 2023)(citing Sims v. Clarendon Nat. Ins. Co., 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004)).  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000).  Overall, "[t]hese principles dictate that courts look for evidence that the parties 'objectively revealed an intent to submit the [dispute] to arbitration.'"  Dasher v. RBC Bank (USA), 745 F.3d 1111, 1116 (11th Cir. 2014)(alteration in original)(quoting First Options, 514 U.S. at 944).

The parties dispute whether: (1) there exists an agreement between Spicer and OneMain to arbitrate disputes related to the Note; and (2) the agreement covers the disputes.  The Court will address each in turn.

## A.   A Valid Written Agreement to Arbitrate Exists

Spicer asserts that there is not an enforceable arbitration agreement because by accepting Spicer's alleged settlement payment a new agreement superseded the previous contract containing the arbitration clause. (Doc. #12, pp. 4-6.)  OneMain argues that when

Spicer signed the Loan Agreement containing the arbitration clause, a valid, written agreement existed between the parties. (Doc. #6, p. 11.)

Arbitration is a matter of contract. See Lamonaco v. Experian Info. Sols., Inc., 141 F.4th 1343, 1346 (11th Cir. 2025)(citing Coinbase, Inc. v. Suski, 602 U.S. 143, 147-49 (2024)). Thus, the Court must determine whether a valid arbitration agreement exists and will apply Florida law. See id.; Emps. Ins. of Wausau, 251 F.3d at 1322 ("[S]tate law governs the interpretation and formation of [arbitration] agreements."). Whether a superseding agreement renders a prior arbitration agreement ineffective bears on the existence of an arbitration agreement. See Dasher, 745 F.3d at 1122. Under Florida law, to "prove the existence of a contract, a plaintiff must [show]: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." Vega v. T-Mobile USA, Inc. 564 F.3d 1256, 1272 (11th Cir. 2009)(citing St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004)). Mutual assent is a prerequisite for the formation of any contract. See Gibson v. Courtois, 539 So. 2d 459, 460 (Fla. 1989).

Here, for the purposes of the instant motion, the Court finds that the unsigned settlement offer by Spicer is not an existing and binding agreement between the parties. While a signature is not always required for a contract to be binding, "the acts or

-7-

conduct of the parties" show there was no mutuality or assent to Spicer's settlement offer.  See Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero, 827 So. 2d 338, 339 (Fla. 3d DCA 2002)(citation omitted).  The record reflects that OneMain treated Spicer's $100 check as a partial payment and that Spicer made an additional payment of $1,767.65 after the settlement agreement he claims extinguished any remaining debt.[2]  (Doc. #14-1, ¶¶ 14, 17.)  As such, the evidence shows neither party treated the $100 check as satisfying the outstanding debt.

The parties, however, did enter an existing and binding agreement under the Loan Agreement.  OneMain offered to provide a loan in the amount $20,145.45 in return for a security on Spicer's 2023 Honda CR-V and payments for 60 months.  (Doc. #6-1, p. 5.)  Spicer accepted the Loan Agreement with his signature.  (Doc. #6-1, p. 10.)  The agreement contained all necessary terms to be enforced and included the arbitration agreement which outlines

---

[2] Therefore, this argument cannot also be used to suggest that OneMain waived its ability to utilize arbitration.  See Payne v. Savannah Coll. of Art & Design, Inc., 81 F.4th 1187, 1201 (11th Cir. 2023)(discussing how waiver typically is implicated when parties have "invoked the litigation machinery" by filing motions to dismiss, answering complaints, etc.); see also Morgan v. Sundance, Inc., 596 U.S. 411 (2022)("Sometimes, [defendants] engage in months, or even years, of litigation—filing motions to dismiss, answering complaints, and discussing settlement—before deciding they would fare better in arbitration. When that happens, the court faces a question: Has the defendant's request to switch to arbitration come too late?").

both particular claims and categories of claims subject to arbitration. Therefore, there is an existing and binding agreement to arbitrate.

### B.    The Disputes Fall Within the Arbitration Clause

Spicer next argues that, even if there is an arbitration agreement, none of the claims are within the scope of the arbitration clause. (Doc. #12, p. 7.)  OneMain contends the disputes clearly fall within the arbitration clause because they arise from "alleged communications and efforts to collect or service Plaintiff's loan" as well as the "enforceability of his loan."  (Doc. #6, p. 13.)

Here, all claims brought by Spicer fall within the arbitration clause.  Count I alleges a violation of the Telephone Consumer Protection Act, which the arbitration agreement explicitly outlines as a claim subject to arbitration.  (Doc. #6-1, p. 9.) Counts II and III allege violations of the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act. (Doc. #1-1, p. 3.)  Both counts allege that OneMain communicated with the Plaintiff to enforce the Loan Agreement.  (Id.) Accordingly, the claims fall within the arbitration clause since the clause covers any claims arising from OneMain's communications and claims relating to the "servicing, collecting, or enforceability of any transaction involving [OneMain] or

-9-

[Spicer.]"  (Doc. #6-1, p. 9.)  Finally, Count IV alleges breach of contract and unjust enrichment, which arises out of or relates to the enforceability of a transaction between OneMain and Spicer and therefore is covered by the arbitration clause.  (Id.) Accordingly, all the disputes in the instant case are arbitrable issues.

### C.   OneMain Neither Relied on Delegation nor Severability

Spicer argues that OneMain cannot argue either that issues of arbitrability were delegated to the arbitrator or that severability saves the arbitration agreement, because the subsequent settlement agreement extinguished the arbitration agreement entirely.  (Doc. #12, pp. 7-8.)  Given that OneMain presented no arguments about delegation or severability, the Court will not address these points in Spicer's response.  Even if the Court considered the arguments, Spicer relied upon the argument that his settlement offer superseded the arbitration agreement, which was rejected above.

### D.   Limited Discovery and an Evidentiary Hearing Is Not Necessary

Finaly, Spicer moves for limited discovery and an evidentiary hearing.  (Doc. #12, p. 8.)  Spicer specifically requests limited discovery for: (1) proof of negotiation of the $100 settlement instrument; (2) internal account records regarding settlement

processing; and (3) collection vendor assignments and call records. (Id.) The Court finds no reason to permit limited discovery in this case because the record already includes Spicer's purported settlement offer and evidence of conduct that clearly shows no mutuality of assent was reached. Accordingly, Spicer's request for limited discovery and an evidentiary hearing is denied.

For the reasons set forth in this order, the motion to compel arbitration will be granted.

Accordingly, it is now

**ORDERED:**

(1) Defendant's Motion to Compel Arbitration (Doc. #6) is **GRANTED.**

(2) Plaintiff's request for limited discovery and an evidentiary hearing (Doc. #12) is **DENIED.**

(3) The case is **STAYED** pending completion of arbitration. Beginning on June 1, 2026, and for every three months thereafter, the parties shall file a joint notice on the status of arbitration until arbitration is complete.

(4) The Clerk shall terminate all pending deadlines in this case while the case is stayed.

**DONE AND ORDERED** at Fort Myers, Florida, this ___20th___ day of April 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record